STATE of Missouri ex rel. STATE
HIGHWAY COMMISSION of
Missouri, Respondent,

v.

Arthur W. HAMMEL et al., Defendants,

Erwin F. Vetter, Appellant.

No. 49590.

Supreme Court of Missouri,

Division No. 1.

Nov. 11, 1963.

Opinion Modified on Court's own Motion
and Rehearing Denied Dec. 9, 1963.

Erwin F. Vetter, Clayton, for appellant.

Robert L. Hyder, Bruce A. Ring, Jefferson City, for respondent.

COIL, Commissioner.

In this condemnation case Erwin F. Vetter has appealed from a judgment (designated final for appeal purposes) striking his amended answer and dismissing his amended counterclaim. Respondent, the

State Highway Commission of Missouri, hereinafter sometimes called the commission, filed its petition on September 28, 1954, seeking to condemn several parcels of land located in St. Louis County "for new State Highway Route 40." It was averred that one tract was owned by Emil Waibel and that Erwin F. Vetter had an interest in said land as the trustee in a deed of trust.

Former appeals by Waibel and Vetter, respectively, to this court from the trial court's judgment dismissing Waibel's counterclaim were dismissed as premature in State ex rel. State Highway Commission v. Hammel, Mo., 290 S.W.2d 113. Upon remand of that case the trial court sustained present appellant Vetter's motion to be substituted for Emil Waibel. That motion averred that Waibel had died and that Vetter had become the owner of the fee in the tract of land involved. Thereafter Vetter filed an amended answer and an amended counterclaim.

We consider first that portion of the judgment dismissing the amended counterclaim.

Waibel's counterclaim and Vetter's original and amended counterclaims each sought a judgment requiring the commission to specifically perform an alleged contract which appellant averred he had entered into with the commission, wherein it was agreed that in consideration of the conveyance to it of the required right-of-way across the tract of land in question the commission would construct an overpass and adjacent service streets necessary for ingress and egress to and from said tract in accordance with a construction plan voluntarily prepared by the commission and furnished to appellant; that thereafter appellant fully performed by delivering to the commission a deed conveying to it the right-of-way required in accordance with the description thereof furnished by the commission, and said deed was accepted by the commission; that appellant had offered, and by an averment in the counterclaim

again offered, to execute any other instruments which the commission deemed necessary to enable it to complete the highway construction in accordance with the plan agreed upon between the commission and appellant; that the commission "fraudulently, arrogantly and oppressively refused to construct said overpass and service streets in accordance with said plan and contract" but sought by its petition, filed September 28, 1954, to condemn the land to which it had theretofore received a deed and refused to provide ingress and egress to appellant's land which was divided into two parts "by said depressed limited access highway." Appellant alleged further that he had no adequate remedy at law in that the amount of damages he had sustained was unascertainable, and that "unless specific performance is granted herein he will be unable to secure ingress and egress to the north tract separated by said highway and will be unable to connect said north tract with the south tract over and upon plaintiffs' right-of-way for which no damage would be adequate compensation."

Appellant alleged further that the overpass and service streets which were agreed to be constructed were not state or federal highways as such, and that "their construction as an adjunct to such highways does not impinge upon the power of plaintiff to 'locate, relocate, design and maintain' State or Federal Highways * * * or impinge upon plaintiffs' constitutional authority to limit access to said Highway * * * in the manner prescribed by law."

■ Appellate jurisdiction is in this court since title to real estate is involved, even where, as here, specific performance is sought by a vendor against a purchaser. State ex rel. State Highway Commission v. Hammel, supra, 290 S.W.2d 116[1].

In Handlan-Buck Co. v. State Highway Commission, Mo., 315 S.W.2d 219, appellant contended that it was the third-party beneficiary of a contract between the Highway Commission and the City of St. Louis under the provisions of which the commis-

sion agreed not to vacate and close Poplar Street at Third. This court there pointed out that State ex rel. State Highway Commission v. James, 356 Mo. 1161, 205 S.W.2d 534, had held that the commission "had the authority to condemn or extinguish the right of an abutting owner to access to a state highway," and that the constitutional provision authorizing the commission to do so "where the public interest and safety may require is a grant of police power" and, consequently, the commission's authority to construct a limited access highway over Third Street and to close Poplar Street was within the state's police power and that if the closing of Poplar was in the public interest and for the safety of the public, the commission's authority to so act could not be limited, curtailed or destroyed by a contract it may have made with the city. The opinion quoted with approval this statement from 16 C.J.S. Constitutional Law § 179, pp. 913–915:

> "Neither the state legislature nor any inferior legislative body to which a portion of the police power has been granted can alienate, surrender, or abridge the right to exercise such power by any grant, contract, or delegation whatsoever, although in some jurisdictions no provision of controlling law expressly forbids such action."

It follows, therefore, that unless appellant's counterclaim alleged facts which, if proved, would tend to show that the commission's refusal to construct the overpass and service roads was not the result of a decision of the commission which the public interest and safety required but, on the contrary, constituted a manifest abuse of the commission's broad discretionary authority, the counterclaim failed to state a claim upon which relief could be granted and, if so, was properly dismissed. An examination of the amended counterclaim shows that while it alleged that the commission "fraudulently, arrogantly and oppressively refused to construct said overpass and service streets in accordance with said plan and contract," no facts are alleged, as opposed to the conclusionary words set forth above, the proof of which would tend to establish that the decision of the commission to breach its alleged contract with appellant and to proceed with a different plan which eliminated the proposed overpass and service roads although a part of the original plan, was not a proper exercise of the authority vested in the commission by Section 29 of Article IV of the 1945 Missouri Constitution V.A. M.S., and by the sections of Chapter 227, RSMo 1959 and V.A.M.S. State ex rel. State Highway Commission v. James, 356 Mo. 1161, 205 S.W.2d 534.

■ As noted heretofore, appellant also alleged that to require the commission to specifically perform its agreement to construct an overpass and designated service roads would not "impinge upon" the commission's power and authority to locate, relocate, or abandon a highway, or "impinge upon" its authority and power to limit access to any highway. As noted, however, the commission may limit or extinguish the easement of access through the exercise of the power of eminent domain where the public interest or safety so require. State ex rel. State Highway Commission v. James, supra, 356 Mo. 1161, 205 S.W.2d 537 [7, 8]. It is apparent, therefore, that to require the commission to construct a certain overpass and service roads at a particular location, which so far as the fact allegations of the counterclaim show may have been eliminated from the plan first proposed in the public interest and safety, would "impinge upon" the commission's authority to limit access. See generally, State ex rel. State Highway Commission v. Elliott, Mo., 326 S.W.2d 745; Hamer v. State Highway Commission, Mo., 304 S.W.2d 869, 874 [7, 8]; Nairn v. Bean, 121 Tex. 355, 48 S.W.2d 584; Board of Commissioners of Harmon County v. Oklahoma State Highway Commission, 163 Okl. 207, 23 P.2d 681; Board of Commissioners of Canadian County v. Oklahoma State Highway Commission, 176 Okl. 207, 55 P.2d 106.

We hold that the trial court properly dismissed appellant's amended counterclaim. We do not reach respondent's other contentions in support of the trial court's judgment dismissing the counterclaim.

We now consider that part of the judgment which struck appellant's amended answer.

As noted heretofore, appellant appealed from the judgment of the trial court entered on June 5, 1962, which sustained the commission's motion to strike appellant's amended answer as well as the commission's motion to dismiss appellant's counterclaim. Appellant under his "Points and Authorities" does not state that the trial court erred in striking his amended answer, nor does he there make any contention with respect to the amended answer. In his statement of the case, under the heading "Record Below," appellant says:

"There has been no hearing or trial on the issues made by the original unopposed answers filed by Appellant and the deceased Emil Waibel. The original Answer of Emil Waibel was dismissed without a hearing thereon and thereafter voluntarily reinstated by the Court (Supp. Tra. p. 21). The hearing on these pleadings awaits the disposition of this appeal."

In the argument portion of his brief, under point III, in which appellant discusses the various numbered contentions in respondent's motion to dismiss appellant's counterclaim, the following paragraph is the only mention of the action of the court in striking appellant's amended answer:

"Appellant obtained leave of court to file his Amended Answer (Tra. p. 19). This Amended Answer was filed to. clarify the issues as made by the pleadings after the Order of Substitution. Appellant has no explanation for the action of the Court in thereafter striking the Amended Answer. Appellant will insist on a hearing either upon the original Answer or the Amended Answer. Sec. 10 of Article I of the Constitution of 1945. Amendment V and Amendment XIV to the Constitution of the United States."

We are unable to understand appellant's position. He suggests apparently that he has been denied a hearing on his answers and thus has been denied due process and, nevertheless, he not only failed to include that contention under his "Points Relied On" or to therein specifically assign the striking of his amended answer as error or to brief any contention with respect thereto but, on the contrary, has affirmatively stated that a "hearing on these pleadings awaits the disposition of this appeal."

■ The propriety of the trial court's action in striking the amended answer would be a question before us on this appeal were it presented as such by appellant. It has not been presented and thus we decline to review any such question, despite the fact that respondent argues under a specific point in its brief that the trial court correctly struck appellant's amended answer. This court, under the circumstances above set forth, is unwilling to search the record to determine the propriety of the trial court's action in the absence of specified reasons as to whether and, if so, why the trial court erred in striking the amended answer.

Appellant's brief, after erroneously suggesting, as above noted, that any hearing on the matters set forth in his answers should await the disposition of this appeal (apparently erroneously treating this appeal as involving only the action of the trial court in dismissing the amended counterclaim), then contends, in effect, that the condemnation petition in this case was fatally defective in that it did not allege two facts necessary to confer jurisdiction upon the trial court to proceed. Appellant's argument, as we understand, is that certain necessary jurisdictional allegations were absent from the commission's petition be-

cause the allegations contained therein as to the kind and type of highway proposed were not true, but that the proposed highway was in fact a "different kind of highway" and, consequently, it was necessary for the commission to allege that all constitutional and statutory requirements pertaining to the commission's authority to construct such a "different kind of highway" had been complied with before the trial court could have jurisdiction to act under the condemnation petition.

Respondent alleged in paragraph 2 of its petition: "Relator is empowered by law to condemn, in the name of the State of Missouri, land property and rights when necessary for the proper and economical construction and maintenance of state highways, and under such conditions to locate, relocate, establish, construct and maintain additional state highways, bridges and tunnels outside the corporate limits of cities having a population in excess of 150,000 either in congested traffic areas of the State, or where needed to facilitate and expedite the movement of through traffic. The hereinafter described highway is wholly outside the corporate limits of any city having a population in excess of 150,000. Relator has determined in compliance with law that said highway is in a congested traffic area of the State, and is needed to facilitate and expedite the movement of through traffic, and has ordered the location of, preparation of plans for, and construction of said highway, a part of which begins on or about the Eastern boundary of Carson Heights Subdivision, and runs Eastwardly intersecting Lucas-Hunt Road at Lillian Avenue, and continues Eastwardly to an intersection with the Western boundary of ALTA VISTA SUBDIVISION, all in St. Louis County, Missouri."

■ Appellant says the highway proposed was an interstate highway required to be constructed in compliance with federal law and in pursuance to the authority granted in subparagraph (d) of paragraph (3), Section 30 of Article IV, Missouri Constitution of 1945; and that such was not alleged in the petition nor was it averred that the design of the highway had been approved by the United States Bureau of Public Roads. Sufficient answer to those contentions is to point out that while it is true that Section 30(3) (d), Article IV, does confer upon the commission the discretionary authority to locate, relocate, establish, acquire, construct and maintain highways in the state when necessary to comply with any federal law or requirement which is or shall become a condition to the receipt of federal funds, it is also true that the same section and paragraph of Article IV [30(3)], but in subparagraph (f), confers upon the commission the discretionary authority to acquire, establish, etc., "additional state highways, bridges and tunnels, outside the corporate limits of cities having a population in excess of 150,000, either in the congested traffic areas of the state or where needed to facilitate and expedite the movement of through traffic." Thus, it is apparent that the petition alleged that the land in question was being condemned for a highway which the commission was specifically authorized to locate and construct. It is apparent, therefore, that appellant's contentions above noted are without merit.

■ Appellant's final point in his brief appears to be that to wholly deprive a landowner of his rights of access to his remaining land by reason of the construction of a limited access highway when such access could be provided by "service streets," constitutes a taking of the remaining land "not for a public use." We have heretofore noted that the commission, through proceedings in eminent domain, may, in the proper exercise of the police power vested in it, limit and extinguish access between a highway and abutting property. State ex rel. State Highway Commission v. James, supra. Appellant is entitled to just compensation for the damages he has lawfully sustained as a

result of the construction of the highway in question; but such matters are not before us on this appeal.

The judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL C., is adopted as the opinion of the court.

All concur.